Case 4:23-cv-04016   Document 33   Filed on 02/21/25 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2025
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BLESSING NWOSU, | § | |
| | § | |
| *Plaintiff*, | § | |
| VS. | § | CIVIL ACTION NO. 4:23-cv-4016 |
| | § | |
| 1600 WEST LOOP SOUTH, LLC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### ORDER

Pending before this Court is 1600 West Loop South, LLC's[1] ("Defendant") Motion for Summary Judgment. (Doc. No. 30). Blessing Nwosu ("Plaintiff") responded in opposition, (Doc. No. 31), to which Defendant replied, (Doc. No. 32). Having considered the motion, the applicable law, and the summary-judgment evidence, the Court **GRANTS** the motion as to Plaintiff's federal-law claims. (Doc. No. 30). The Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims and dismisses them without prejudice to being filed in state court, if Plaintiff so chooses.

Also pending before this Court is Plaintiff's Motion to Extend Expert Witness Deadlines. (Doc. No. 23). Defendant responded in opposition, (Doc. No. 24), and Plaintiff filed a reply, (Doc. No. 25). Given that the Court's disposition of this case does not depend on what an expert may testify to, the Court need not address this motion before granting the summary judgment. Thus,

---

[1] While Hospitality Headquarters, Inc. and Landry's LLC were initially joined as defendants in this case, pursuant to the parties' joint motion, (Doc. No. 21), the Court dismissed them, (Doc. No. 22). The Court also notes that Plaintiff also named a "Jane Doe" as defendant, representing that she, "when identified, will be served with process," but, to date, this has not been done, despite the fact that Defendant expressly identified a Janayjah Dunmore as the Jane Doe figure. *See* (Doc. No. 30 at 14) *and* (Doc. No. 30-1 at 3). Rule 4 requires that service of process be effected within 90 days after the Complaint is filed. FED. R. CIV. P. 4(m). This time period has long since expired. Therefore, the Court hereby dismisses Jane Doe from the case for failure to timely serve. Thus, 1600 West Loop South, LLC is the sole defendant; and, consequently, this Order disposes of the entire case.

Plaintiff's Motion to Extend Expert Witness Deadlines is **DENIED** as moot. (Doc. No. 23). The Court similarly **DENIES** as moot Plaintiff's Motion to Extend Deadlines. (Doc. No. 26).

**I.   Background**

Plaintiff brings this suit for alleged racial discrimination at a restaurant. Plaintiff is an African American woman. (Doc. No. 13 at 4). On May 24, 2023, Plaintiff, along with her friends, gathered at Bloom & Bee restaurant in the Post Oak Hotel in Houston, Texas, for a birthday brunch for one of her friends. (*Id.* at 6). Her outfit for this occasion, displayed below and the focal point of this case, was a red dress with a halter top:

 

(Doc. No. 30-12).

Bloom & Bee is one of six dining and drinking establishments at Post Oak Hotel, the only five-star hotel in Houston. (Doc. No. 30-3 at 1). Bloom & Bee purports to be one of the more upscale of the six. As such, Bloom & Bee strives to offer patrons "fine dining in a luxurious and family-friendly environment." (*Id.*). Consequently, the hotel has a property guideline, and the restaurant has a dress code, both of which have been in effect since at least 2018. (*Id.* at 1–2). The hotel's property guidelines, available online, state that "[e]xcessive[ly] revealing attire in [public

areas] will result in expulsion from the property. (Doc. No. 30-2 at 1). The restaurant's dress code, also listed online, sets out the standard as "business causal."[2] (Doc. No. 30-4 at 1). The summary-judgment evidence also demonstrates that employees are trained to identify violations of this dress code and enforce them, instructing them to consider the "totality of the outfit." (Doc. No. 30-22 at 3). That is, whether an outfit is "excessively revealing" depends on the combination of the various pieces of the outfit. For example, the employee-training slide deck instructs that ripped jeans may be inappropriate in certain circumstances as being "too casual" or "overly revealing," but in other circumstances and considering the "totality of the outfit," they may be acceptable.[3] (*Id.* at 4–5).

To accommodate patrons who may not comply with the dress code, Defendant trains its employees to offer two options: 1) for those with overly revealing attire, wear a shawl that the restaurant provides; or, 2) for those completely out of dress code, dine at a different restaurant at the Post Oak Hotel that does not have as strict a dress code. (Doc. No. 30-6). It is the shawl and its application that forms the basis of Plaintiff's claims.

Plaintiff claims—and Defendant does not dispute—that after she was seated, Defendant's hostess approached Plaintiff from behind and placed the shawl on her, simultaneously explaining that her shoulders were too revealing. (Doc. No. 13 at 6–7). Though Plaintiff found this conduct "offensive" and "rude," (*Id.* at 7), she did not raise the issue with anyone at that time, (Doc. No. 30-11 at 91:14–23). In fact, she stayed for almost five hours, arriving at around 2:00 pm, (Doc. No. 13 at 6), and closing out the check around 6:51 pm, (Doc. No. 30-14).

---

[2] While, on its website, Bloom & Bee requires "business casual" attire without any temporal qualifications, the Assistant Food and Beverage Director, Faith Chen, avers that "Bloom & Bee's dress code is family-friendly from open until 6 p.m. and business casual from 6 p.m. until close." (Doc. No. 30-3 at 2). Nevertheless, the parties' dispute is around whether Plaintiff's attire was too revealing (in violation of the hotel's property guidelines), not whether her attire was too casual.

[3] This "standard," of course, leaves much to the eye of the beholder.

3

Nevertheless, based on this turn of events, Plaintiff has sued the establishment asserting several causes of action: (1) violation of 42 U.S.C. § 1981; (2) violation of 42 U.S.C. § 1983, (3) assault; and (4) intentional infliction of emotional distress. (Doc. No. 13 at 10–14). Defendant, through the present motion, moves for summary judgment on all four causes of action. (Doc. No. 30).

## II.   Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant.

*Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Analysis

#### A. Section 1981

Section 1981 of the Civil Rights Act states:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

42 U.S.C. § 1981(a). The term "make and enforce contracts" is broad and includes the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). In short, the statute serves to protect against racial discrimination for certain enumerated activities.

Plaintiff can raise an issue of material fact in support of her such discrimination claim under § 1981 with either direct or circumstantial evidence. *Dunaway v. Cowboys Nightlife, Inc.*, 436 F. App'x 386, 390 (5th Cir. 2011). Direct evidence is one that, "if believed, proves the fact of discriminatory animus without inference or presumption." *Obudela v. Exxon Mobil Corp.*, 736 F. App'x 437, 442 (5th Cir. 2018). Without direct evidence, however, Plaintiff can rely on circumstantial evidence, in which case the *McDonnell Douglas* burden-shifting framework applies. *Id.* at 443 (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007)). Under that framework, Plaintiff bears the burden of establishing prima facie case of discrimination. *Id.* If she satisfies that burden, the burden then shifts back to Defendant to articulate some legitimate, non-discriminatory reason for its conduct. *Id.* If Defendant produces a legitimate alternative reason, the burden then shifts back to Plaintiff to establish either (1) that the proffered reason is a pretext for discrimination or (2) that the reason, while true, is not the only reason for its conduct. *Id.*

To establish prima facie case for a § 1981 claim, Plaintiff must show that (1) she is a member of a racial minority, (2) Defendant had intent to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute. *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (2003). The first element is not contested. *See* (Doc. No. 30 at 24).

Regarding the second element, Plaintiff offers sufficient evidence to raise a fact issue. The record shows a post on Bloom & Bee's Instagram account, posted on October 12, 2024, of four women holding up their drinks. (Doc. No. 31-2). The photo is captioned "Join us for brunch this weekend at Bloom & Bee!" (*Id.*). It also shows a white woman wearing a dress that is at least as revealing as Plaintiff's, but without a shawl in sight. (*Id.*). That patron is wearing a halter top—with exposed shoulders and back—and her upper thigh is visible in the picture, which suggests her dress may be split or shorter than Plaintiff's. In other words, the picture shows a woman outside of the protected class wearing a revealing outfit, without a shawl, enjoying meals and drinks, and during brunch—when the dress code was likely been identical to when Plaintiff entered the hotel premises at around 2:00 pm. While the Court recognizes that the incident Plaintiff complains of and the social media post are over a year apart, the photo nonetheless serves as circumstantial evidence of disparate treatment towards Plaintiff, a minority woman, and the non-minority patron. It, therefore, at least raises a genuine issue of fact on whether Defendant had discriminatory intent.

Despite raising a face issue on the first two elements, however, Plaintiff, as a matter of law, cannot establish the third element—that the discrimination concerned one or more of the activities enumerated in the statute—and thus, her § 1981 claim fails. The statutory text and Fifth Circuit precedent make this clear. The text prohibits discrimination in two broad categories: in the "making, performance, modification, and termination of contracts," and in "the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship" once the contract is formed. § 1981(b). Here, the former is not an issue. The parties do not dispute that Plaintiff entered the restaurant, remained there, and ordered and consumed food and beverages as she pleased (i.e., making and modification of the contract). Plaintiff also does not dispute that she received all the food and beverages she ordered (i.e., performance of the contract). The evidence also shows that she was free to terminate the contract—by paying the bill and leaving, which she did at 6:51 pm (i.e., termination of the contract). (Doc. No. 30-14).

The issue, therefore, is whether she was free to enjoy "all the benefits, privileges, terms, and conditions of the contractual relationship" once the contract was formed. The Court holds as a matter of law that she was. Plaintiff claims that Defendant is liable under § 1981 because it denied (1) her "right to show [her] shoulders at Bloom & Bee and wear the attire [she] arrived in" because her "appearance was altered by the host's staff"; and (2) "uninterrupted service" because the shawl was placed on her. (Doc. No. 30-10 at 5) (Pl.'s Interrog. Resp.). Those purported "rights" are not contractual rights at all. Indeed, the dress code *was* a term of the contract. The dress code is published online, both for the hotel and for the restaurant, (Doc. No. 30-3 at 1–2), and she knew that the hotel's property guidelines (which contains the ban on overly-excessive attire) existed, even if she chose not to read them, (Doc. No. 30-11 at 50:1–20). Once she chose to enter the private property owned by Defendant, she agreed to abide by those guidelines—which supplemented the terms of the contract—and the restaurant was entitled to enforce them, even with a brief interruption in service. *See King v. Baylor Univ.*, 46 F.4th 344, 358–59 (5th Cir. 2022) ("[A] customer on notice of contract terms available on the internet website is bound by those terms.") (internal quotes omitted); *see also One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 269 (5th Cir. 2011) ("The chief consideration when determining the validity of contractual

terms . . . is whether the party to be bound had reasonable notice of the terms at issue and whether the party manifested assent to those terms."). In effect, Plaintiff is arguing here that she had a contractual right to (1) violate the contractual terms and (2) avoid the enforcement of those terms. That cannot be. As the Fifth Circuit has explained, "a restaurant patron's right to finish her meal is not absolute. If she violates the policies of the restaurant in some way, she may be forcibly removed even before she has the chance to complete her meal . . . or enjoy some other benefit of the restaurant." *Dunaway*, 436 F. App'x at 392. Far from forcibly removing her, Defendant chose to accommodate Plaintiff notwithstanding her alleged non-compliance with the dress code, allowing both Plaintiff and Defendant to form and perform the terms of their contract.

Plaintiff's argument that Defendant's enforcement of the dress code violates her contractual right contravenes this circuit's § 1981 case law. As mentioned above, the Fifth Circuit in *Dunaway* made clear in § 1981 context that if a patron "violates the policies of the restaurant in some way, she may be forcibly removed even before she has the chance to complete here meal." *Id.* Moreover, in *Arguello*, the Fifth Circuit held that, in a restaurant context, unlike in a retail context, there is a "contractual relationship that continues over the course of the meal and entitles the customer to benefits in addition to the meal purchased." *Arguello*, 330 F.3d at 360. In so holding, the court cited to, and quoted in an explanatory parenthetical, a case from the Eastern District of Louisiana—*Charity v. Denny's Inc.*, No. CIV A 98-0554, 1999 WL 544687 (E.D. La. 1999). The sentence the Fifth Circuit chose to highlight is illuminating: "[I]t could reasonably be said that a customer who enters a restaurant for service is contracting for more than just food . . . Dining in a restaurant includes being served in an atmosphere which *a reasonable person would expect in the chosen place.*" *Arguello*, 330 F.3d at 360 n.9 (quoting *Charity*, 1999 WL 544687, at *3 (emphasis added)). At Bloom & Bee, an establishment in "the only five-star hotel in the city of Houston," (Doc. No.

8

30-3 at 1), a reasonable person would expect a dress code and for it to be enforced. Such enforcement is how the restaurant would maintain the atmosphere that a reasonable person would expect from it, which, in turn, provides the "benefits, privileges, terms, and conditions" that forms the backdrop of a contractual relationship. Thus, the enforcement of Defendant's dress code cannot be a violation of a contract or its benefits, privileges, terms, or conditions, because the enforcement itself forms the benefits and privileges of dining at such an establishment. While recognizing that Plaintiff may feel that the dress code was applied to her due to her race, because of the narrow statutory text and the circuit's case law concerning the breadth of § 1981, the Court grants Defendant's Motion for Summary Judgment as to the § 1981 claim.

### B. Section 1983

Plaintiff asserts a § 1983 claim in her First Amended Complaint, (Doc. No. 13 at 13), but utterly fails to defend it in her Response to the Motion for Summary Judgment, *see generally* (Doc. No. 31). That may be for good reason because the Supreme Court made clear that "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 536 U.S. 40, 50 (1999) (internal quotes omitted). Here, Plaintiff does not argue that Defendant is a state actor or acted under color of state law. Thus, the Court grants summary judgment in favor of Defendant on Plaintiff's § 1983 claim.

### C. Assault & Intentional Infliction of Emotional Distress

Having granted summary judgment on Plaintiff's § 1981 and § 1983 claims, the Court is only left with state-law claims over which it could exercise supplemental jurisdiction, namely, assault and intentional infliction of emotional distress. *See* 28 U.S.C. § 1367. The Court finds that a state court is a more appropriate forum in which to litigate the state-law claims, and thus, declines

to exercise supplemental jurisdiction over those claims, pursuant to 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if[] . . . the district court has dismissed all claims over which it has original jurisdiction.").

### IV.   Conclusion

For the foregoing reasons, the Court **DISMISSES** Jane Doe from the case for want of prosecution; **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's federal-law claims, (Doc. No. 30); declines to exercise its supplemental jurisdiction over Plaintiff's state law claims, and thus, they are dismissed without prejudice to filing in state court, if Plaintiff so chooses; **DENIES** as moot Plaintiff's Motion to Extend Expert Witness Deadlines, (Doc. No. 23); and **DENIES** as moot Plaintiff's Motion for Extend Deadlines, (Doc. No. 26).

It is so ordered.

Signed on this 21st day of February 2025.

Andrew S. Hanen
United States District Judge